IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN R. GAMMINO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| V. | § | |
| | § | 3:05-CV-0850-K |
| SOUTHWESTERN BELL TELEPHONE, | § | |
| L.P. and SWBT TEXAS, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions:

(1)     Defendant Southwestern Bell Telephone L.P.'s ("SWB") Motion for Summary Judgment (Document No. 65);

(2)     Plaintiff John R. Gammino's ("Gammino") Motion for Summary Judgment (Document No. 67)

(3)     SWB's Rule 37(b) Motion to Dismiss (Document No. 88)

(4)     Gammino's Motion to Compel SWB to Comply with the Court Order of September 19, 2006; (Document No. 101);

(5)     Gammino's Motion to Compel SWB to Comply with Rule 30(b)(6) Notice of Deposition (Document No. 103); and

(6)     Gammino's Motion for Leave to File Sur-Reply Brief Contrary to SWB's Motion to Dismiss Dealing with Evidence of which Plaintiff Took

Possession After Plaintiff Filed His Reply Brief (Document No. 110).

The Court **GRANTS** SWB's Motion for Summary Judgment because Gammino's own infringement case places his claims squarely within items of anticipatory prior art rendering the asserted claims of his patents invalid under 35 U.S.C. §§ 102(b) ("§ 102(b)). Alternatively, after construing the claims, the Court **GRANTS** summary judgment because Gammino has failed to meet his burden of showing that any SWB product, service or device infringes the patents. Accordingly, all other motions before the Court are **DENIED** as moot.

I.      **Background**

   A.      **SWB's Network**

SWB, a local exchange carrier (or "LEC"), operates a telephone network whereby local telephone lines connect their customers' telephones to network switches operated by SWB. When someone places a telephone call from within the network, the network switch may (1) connect the call to the receiving telephone number, (2) pass the call to a third-party interexchange carrier, or (3) block the call by routing the call to a recorded announcement that informs the caller that the call cannot be completed. An interexchange carrier (e.g. MCI or Sprint) is a telephone company that handles long-distance as well as toll-free (800) telephone calls. Once the call is passed to the interexchange carrier, the handling of the call, including the determination of whether to block the call, is handled by the interexchange carrier not SWB. Both privately

owned payphones and payphones owned by SWB are connected to this network. Privately owned payphones are called customer-owned pay telephones ("COPTs").

SWB assigns a telephone dialing plan to each telephone line in its network. Since September 1998, SWB has assigned the payphone lines in its network to ten dialing plans. These dialing plans identify the types of telephone calls that the switch will (1) connect through the SWB telephone network, (2) pass to a third-party interexchange carrier, or (3) block by routing to a recorded announcement.

### B.     Gammino's Patents in Dispute

On January 15, 1992, Gammino allegedly developed a method for preventing international calling card fraud for the Port Authority Bus Terminal (the "Port Authority") in New York City, New York. Gammino's call blocking method was developed in response to people making fraudulent international telephone calls from public payphones at the Port Authority. Individuals developed several fraudulent methods including: (1) fraudulent callers stole calling card numbers and monopolized pay phones by selling these discounted cards to foreign countries; (2) fraudulent callers would access a long-distance carrier by illegally tapping into a business phone system which would enable them to call anywhere in the world at the expense of the business; and (3) fraudulent callers developed methods to make international calls without ever directly using any of the long distance carriers.

Gammino filed his first patent application on July 9, 1992 which resulted in U.S.

Patent No. 5,809,125 ("the '125 patent") issued on September 15, 1998.  He filed his second patent application on April 2, 1993 which resulted in U.S. Patent No. 5,812,650 ("the '650 patent") issued on September 22, 1998.  With the exception of the additional material in the '650 patent concerning telecommunications switches, the specifications of the '125 and '650 patents are identical.

Each dialing sequence is made up of a "plurality" of dialing digits; a plurality is a set of two or more digits.  As an example, a person might dial "101-0288-011-41-21-619-06-70" to attempt an international call.  For this example, the first plurality is "101" which is an access code to provide access to carriers, and the second plurality is "0288" which is a code identifying the carrier (in this instance 0288 is the code for AT&T).  The third plurality, "011," is a code that indicates the call is a direct-dialed international call.

According to Gammino, the patents in dispute *selectively* block international access calls based on predetermined digits and do not require the blocking of all international calls.  He asserts that the claims of his patents block only international access calls with dialing sequences that meet two criteria, namely, the third plurality of numbers within the sequence are (1) in a position to accomplish international dialing, and (2) are predetermined numbers.  Gammino alleges that SWB has infringed the '125 and '650 patents by using his patented solution to prevent international telephone calls in violation of 35 U.S.C. § 271.  Gammino's patent infringement claims focus on SWB's public telephone lines which include its payphone and inmate lines.  As stated in his

- 4 -

Opposition to SWB's Motion for Summary Judgment ("Gammino's Response"), Gammino contends, among other things, that SWB infringes the asserted claims of his patents because SWB prevents calls "when 011 ('respective predetermined signals') is in the third plurality and in a location to accomplish international dialing irrespective of the second plurality and 101 ('further respective predetermined signals') is in the first plurality." Accordingly, Gammino alleges that SWB is liable for all damages allegedly suffered by Gammino as a result of the infringement.

## II.    Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party, SWB in this case, is entitled to judgment as a matter of law. *Vanmoor v. Wal-Mart*, 201 F.3d 1363, 1365 (Fed. Cir. 2000). SWB, therefore, bears the initial burden of showing the absence of a genuine issue of material fact. Once SWB has met its burden, the burden shifts to the non-movant, Gammino in this case, to introduce evidence showing that the jury could find for him. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The Court, therefore, will grant summary judgment against a party who fails to introduce evidence sufficient to establish the existence of an essential element when that party bears the burden of proof at trial. *Novartis Corp. v. Ben Venue Laboratories, Inc.,* 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c).

### III.    Gammino's Patents are Invalid because Prior Art Anticipates Them

In 1991, international direct-dialed equal access calls were made with the telephone number 10-XXX-011+.   In the mid-1990s, the dialing sequence for international direct-dialed equal access calls changed from 10-XXX-011+ to 101-XXXX-011+.   International direct-dialed equal access calls have a different dialing sequence than operated-assisted international calls which have a dialing sequence of 10-XXX-01+; thus, the third plurality of digits (e.g. "011" and "01") in a dialing sequence indicate whether the call is a direct-dialed ("011") or an operator-assisted international call ("01").

Gammino asserts that switch-implemented call-blocking services infringe his patents if such services block 101-XXXX-011+ international direct-dialed calls. Gammino has made his position clear.   For example, in his Supplemental Responses to SWB's Interrogatories, he stated, "SWB has disclosed one method it uses to block international calls and that method infringes.   As such, the conclusion is that SWB infringes when any SWB devices prevents 101xxxx011+ calls."

Switch-implemented call-blocking services that blocked 10-XXX-011+ calls were offered for sale and available for purchase <u>and</u> were well known in the art of switch translations *before* Gammino conceived of his claimed invention.   For the purposes of this Section only, the Court adopts, without deciding, Gammino's interpretation of the claims of his patents.   Under Gammino's interpretation of his claims, several known

prior art call-blocking services infringe his patents.  The analysis for anticipation and infringement is the same–"that which infringes, if later, would anticipate, if earlier."  *See Polaroid Corp. v. Eastman Kodak Co.,* 789 F.2d 1556, 1573 (Fed. Cir. 1986).  Such prior art services, therefore, cannot infringe Gammino's patents because they anticipate them and render them invalid under 35 U.S.C. §§ 102(b).

A.     **Three Prior Art Call Blocking Services Blocked 10-XXX-011+ Calls**

According to Gammino's testimony, he conceived of his invention on January 15, 1992.  At the time he conceived his invention, at least three prior art call-blocking services blocked 10-XXX-011+ calls including (1) SWB's Local and 1+ Blocking Service, (2) SWB's International Direct Dialed ("IDD") Blocking Service, and (3) Embarq Florida's RSPS Option 1.  To that end, each of these prior call-blocking services was (1) fully implemented in central office switches, (2) the subject of a public tariff approved by the appropriate public utilities commissions, and (3) available for ordering and purchase by customers.

1.     **SWB's Local and 1+ Blocking Service Blocked 10-XXX-011+ International Telephone Calls as Early as May 31, 1999**

After obtaining approval from the Public Utility Commission of Texas ("Texas PUC"), SWB offered a call-blocking service known as Local and 1+ Blocking Service to owners of costumer-owned pay telephones ("COPTs") in its May 31, 1991 General Exchange Tariff.  To determine whether to block a call, this service analyzed both the first plurality (e.g. "10") and the third plurality of digits (e.g. "011") in a telephone

number.  The service blocked calls on the basis of the digits in the third plurality–if the digits in the third plurality were "011," then the call was blocked.  Mark Tamasi, a former SWB switch technician who authored SWB's translation tables for 5ESS switches, confirmed that the service blocked 10-XXX-011+ calls on the basis of the third plurality of digits and was implemented in SWB's 5ESS central office switches before May 31, 1991.  According to the tariff, this call-blocking service sold for $23.10 per month.  In fact, the Local and 1+ Blocking Service is still currently available for purchase by COPT customers.

> ### 2.    SWB's IDD Blocking Service Blocked 10-XXX-011+ Calls as Early as December 18, 1991

On June 3, 1991, SWB submitted an application to the Texas PUC to revise its COPT tarriff to offer an additional international direct-dialed ("IDD") call-blocking service.  This service, named IDD Blocking, blocked 011+ and 10-XXX-011+ calls on the basis of the third plurality of digits.  Thus, the IDD Blocking Service blocked 10-XXX-011+ calls using the exact same call-blocking analysis as the Local and 1+ Blocking Service.  The Texas PUC December 18, 1991 Order concluded that SWB central offices switches were capable of blocking international direct-dialed calls.  Specifically, the order stated:

> Currently, a SWBT central office employing one of seven types of switches is capable of providing international direct-dialed call blocking service to coin-operated, customer-owned pay telephone service vendors.

Tamasi also confirmed that the IDD Blocking Service was implemented in 5ESS central

office switches at least as early as December 18, 1991.  After the Texas PUC approved

SWB's application, SWB began offering the IDD Blocking Service for sale to its COPT

customers at least as early as December 18, 1991 for $23.10 per month plus a one-time

charge of $10.  The IDD Blocking Service is still currently available for sale to COPT

customers.

The Local and 1+ Blocking Service and IDD Blocking Service are still available

to SWB customers for purchase today.  SWB offers call-blocking services that block 101-

XXXX-011+ calls based on the same digit sequences that it used to block 10-XXX-011+

calls as of May 31, 1991 and December 18, 1991.

### 3. Embarq Florida's RSPS Option 1 Blocked 10-XXX-011+ Calls as Early as April 8, 1998

Like SWB, Central Telephone of Florida (now Embarq Florida (collectively

"Embarq")) offered a call-blocking service known as Restricted Sent Paid Service

("RSPS") Option 1 in its April 8, 1988 General Customer Services Tariff.  Embarq's

RSPS Option 1 blocked 10-XXX-011+ at the central office switch on the basis of the

third plurality of digits.  According to Paul Milhan, a switch technician who has worked

for Embarq for thirty-one years, Embarq blocked both 011 and 10-XXX-011 dialed calls

since mid-1987.  On April 8, 1988, Embarq's tariff was approved and made public, and

from that date, it programmed all its switches to block 011 and 10-XXX-011 calls.  The

Embarq tariff identified a sales price of $1.50 per month for the RSPS Option 1 Service.

**B.     Public Documents Show Prior Art Anticipated Gammino's Patents**

Blocking calls on the basis of dialing sequences was developed before Gammino conceived of his invention.  As evidenced by the documents set forth below, switch translators have known how to block calls on the basis of dialing sequences since the introduction of electronic switching in the 1980s.  Dialing plans specify whether a switch will allow or block particular types of telephone calls.  For each dialing plan, switch translations technicians program screen tables within a switch to identify those digit sequences that are prohibited.  When a switch identifies a call made with a prohibited digit sequence, the switch blocks the call.  Thus, to block international direct-dialed calls, a switch translator would program a switch to recognize the 10-XXX-011+ digit sequence for the dialing plan.  The information a person of ordinary skill in the art of switch translations (i.e. switch translators) would need to block international calls is a targeted digit sequence such as 10-XXX-011+.

By identifying the targeted digit sequence, several public documents that predate the conception of Gammino's invention provide sufficient information to enable a person of ordinary skill in the art of switch translations to block 10-XXX-011+ calls.  These documents also show that call-blocking services that blocked 10-XXX-011+ services based on the digits in the third plurality were in use before Gammino ever conceived of his invention; thus, confirming SWB's contention that it has blocked 10-XXX-011+ calls as early as May 31, 1991.

- 10 -

### 1.    SWB's December 18, 1991 Tariff and Related Documents

SWB's December 18, 1991 General Exchange Tariff specifically identified 10-XXX-011+ as a digit sequence that SWB's IDD Blocking Service blocked.  By identifying the digit sequence, the tariff would have enabled a switch translator to set program switches to block 10-XXX-011+ calls.  Two other documents relating to the December 18, 1991 Tariff described blocking 10-XXX-011+ calls.  In its June 3, 1991 letter filed with the Texas PUC, SWB stated that its IDD Blocking Service blocked 10-XXX-011+ calls:

> This filing is made pursuant to Substantive Rule § 23.54 (Private Pay Telephone Service), Paragraph (g)(8), which required Southwestern Bell to file a tariff by June 1, 1991, to offer direct dialed international call blocking ("011+" and "10XXX-011+") where facilities are available.

The Texas PUC acknowledged that SWB's IDD Blocking Service would block 10-XXX-011+ in its December 18, 1991 Order:

> On June 4, 1991, Southwestern Bell Telephone Company (SWB) filed an application to revise its Customer Owned Pay Telephone Service tariff to offer international direct-dialed call blocking (011+, 10XXXX+011+) where facilities are available.

### 2.    Documents Filed with the FCC

In 1990, the Federal Communications Commission ("FCC") received public comments to consider whether to require telecommunications carriers to *unblock* equal access telephone calls (i.e. 10-XXX and 950-XXX) at payphones.  The FCC received comments whereby commentators argued that, if the FCC began to require the

unblocking of equal access calls, the FCC would, at a minimum, have to allow carriers

to block 10-XXX-011+ calls as a way of preventing payphone fraud.

On September 13, 1991, the associate director of telecommunications services at

the University of Wyoming submitted a comment to the FCC which stated, in pertinent

part:

> The electronic switching systems of the LECs could be programmed to check
> against 10XXX-1+ and 10XXX-011+ calls.  They would only allow 10XXX-0-,
> 10XXX-0+Area Code, and for international; 10XXX-01+Number (Where the
> Number is a **legitimate** international number and starts with a 2 through 9, not
> a 0 or 1.  *This prevents 011 calls*).  Most of the new LEC switches could do this on
> a generic basis or do it when they hand-off the call to the carrier. (emphasis
> added).

This letter describes those calls that are to be blocked and those calls that are to be

allowed by identifying the digits that are legitimate (e.g. 2 through 9) and those that are

not (e.g. 0 or 1)–preventing 011+ calls.

Similarly, in September 1991, the American Public Communications Council

(APCC), a payphone trade association, submitted a public comment stating:

> [N]o party has disputed APCC's contention that blocking of all (011 and 10xxx-
> 011) direct dial international calls can be implemented in every equal access end
> office and has been economically implemented by several LECs.

On April 26, 1991, AT&T also described to the FCC in a public comment that switches

block 10-XXX-011+ calls.

> The LECs also currently have the capability to block all international calling
> (011+, 01+, 10XXX 01+, 10XXX 011+) or to block 011+ and 10XXX 011+
> (direct dialed calls) while allowing 01+ and 10XXX 01+ (operator handled calls)
> to pass.

> This blocking of international direct dialed (01+ and 10XXX 011+) calls is particularly attractive to the private payphone industry. Even though most private payphone owners block 10XXX 0+ dialing, this industry is currently experiencing a high degree of international fraud and blocking of this type would help to reduce this exposure. This feature in conjunction with a "NO PIC" access line currently used by many private payphones, could eliminate much of the current fraud in the private payphone industry.

Like AT&T, Omniphone, a maker of telephone equipment, submitted a public comment on April 1, 1991 stating:

> [B]e advised that Omniphone public pay telephone controllers have allowed the aggregator to permit 10XXX 0+ while blocking 10XXX 1+ and 10XXX 011+ for over a year.

The tariff and comments listed above predate Gammino's conception of his invention and show that blocking 10-XXX-011+ calls was well-known in the art of switch translations.

## C. Under Gammino's Interpretation, His Patents are Invalid Pursuant to § 102(b) as set forth in *Vanmoor*

If a prior art reference infringes any claims of a patent, those claims are invalid as a matter of law. *Atlas Powder Co. v. Ireco, Inc.,* 190 F.3d 1342, 1346 (Fed. Cir. 1999)("If granting patent protection on the disputed claims would allow the patentee to exclude the public from practicing prior art, then that claim is anticipated, regardless of whether it also covers subject matter not in the prior art."). The party challenging validity, like SWB in this case, must prove its case by clear and convincing evidence. *Baxter Int'l, Inc. v. Cobe Laboratories, Inc.,* 88 F.3d 1054, 1058 (Fed. Cir. 1996). A patent is invalid under § 102(b) if:

- 13 -

> the invention was patented or described in a printed publication in this or a
> foreign country or in public use or on sale in this country, more than a year prior
> to the date of the application for patent in the United States.

35 U.S.C. § 102(b).  A claimed invention is considered to be on sale within the meaning

of § 102(b) if, more than a year before the filing date (the critical date), two conditions

are satisfied (1) the product must be the subject of a commercial offer for sale and (2)

the invention must be ready for patenting.  *Vanmoor v. Wal-Mart*, 201 F.3d 1363, 1366-

67 (Fed. Cir. 2000)(citing *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 67 (1998)).  The

ready for patenting requirement may be satisfied by proof of a reduction to practice.  *Id.*

### 1.    SWB's Call-Blocking Services Were Available For Purchase More Than One Year Before Gammino Applied for His Patents

In this case, Gammino has accused two of SWB's call-blocking services: (1)

SWB's Local and 1+ Blocking Service and (2) SWB's IDD Blocking Service.  These

services were implemented in SWB's central office switches and were publicly available

for purchase before Gammino even conceived of his invention.  As set forth in Section

III-A of this Order, SWB offered its Local and 1+ Blocking Service for sale in a public

tariff as of May 31, 1991–more than one year before Gammino applied for either patent.

SWB also offered its IDD Blocking Service for sale in a public tariff on December 18,

1991–more than one year before Gammino applied for the '650 patent.

### 2.    SWB's Call-Blocking Services Were the Subject of a Commercial Offer For Sale and Were Ready for Patenting

These call-blocking services were the subject of a commercial offer for sale because

public utility tariffs are "offers to sell on specified terms." *See Cahmann v. Sprint Corp.,* 133 F.3d 484, 487 (7th Cir. 1998). The call-blocking services were also considered ready for patenting as of the dates of their respective tariffs. SWB's Local and 1+Blocking Service and IDD Blocking Service were fully implemented in central office switches; thus, these services were reduced to practice. A fully implemented service that was offered for sale meets the test of being "ready for patenting."

### 3.    SWB Satisfied Its Burden of Proof

SWB meets its burden of proving by clear and convincing evidence that its call-blocking services anticipated Gammino's patents. Its burden of proving anticipation was satisfied by Gammino's allegation that the accused call-blocking services infringed his patents. *Vanmoor,* 201 F.3d at 1366-67(holding although defendants bore the burden of proving that cartridges anticipated the patent, that burden was satisfied by plaintiff's allegation that the accused cartridges infringed the patent). Stated differently, the fact that Gammino bases his infringement claims against SWB on SWB's own prior art call-blocking services renders the claims of his patents invalid. *Vanmoor,* 201 F.3d at 1366-67(citing *Evans Cooling Sys. Inc. v. General Motors Corp.,* 125 F.3d 1448, 1451 (Fed. Cir. 1997)(holding patent invalid under on-sale bar where accused product was offered for sale prior to the critical date of the patented invention)); 35 U.S.C. § 102(b). By accusing SWB of infringing his patents when blocking 101-XXXX-011+ direct-dialed international calls, Gammino has, in effect, confirmed that SWB's call-blocking methods

satisfy all the limitations of his patents.

### 4. Gammino's Response

In his Response, Gammino argues that SWB cannot prove by clear and convincing evidence that the alleged prior art has all the limitations of his Patents.  In essence, he alleges that the prior art (e.g. SWB's call blocking services) is not identical to Gammino's invention.  *Matsushita Elec. Indus. Co., Ltd. v. Cinram Int., Inc.,* 299 F. Supp. 2d 348, 361 (D. Del. 2004).  Specifically, Gammino states that "the listing of 'block 10XXX-011+ calls' in tariffs does not constitute technical information that SWB was using all the limitations of a claim."  However, Gammino did not distinguish SWB's call-blocking services that blocked 10-XXX-011+ calls in 1991 from services that block 101-XXXX-011+ calls today.  Instead, Gammino argues that SWB's call-blocking services that *selectively* block 101-XXXX-011+ calls on the basis of digits in the third plurality of the dialing sequence infringe his patents; while at the same time, Gammino contends that SWB's prior call-blocking services which selectively blocked 10-XXX-011+ calls based on the third plurality of digits falls outside the scope of his claims.  In an attempt to demonstrate that prior art does not anticipate his patents, Gammino uses 10XXX011-44-207-499-9000 as an example dialing sequence.  According to Gammino, a user would be using the patented method if he chose "10" as a predetermined signal in the first plurality and "011" as a predetermined signal in the third plurality to selectively block international direct-dialed calls and allow operated-assisted calls.

As set forth in Section III(A) of this Order, SWB's call-blocking services selectively block international direct-dialed calls on the basis of digits in third plurality which is exactly how Gammino interprets the claims of his patents as demonstrated by his example.  SWB's Local and 1+ Blocking Service and IDD Blocking Service are still in service today, and the digit sequences that these services block today are the same digit sequences that they blocked as of May 31, 1991 and December 18, 1991.  SWB's call-blocking services were offered for sale in tariffs approved by the Texas PUC before Gammino ever conceived of his invention.  Several public documents set forth in Section III(B) of this Order show that SWB's call-blocking services and other call-blocking services offered throughout the phone industry blocked international calls on the basis of digits in the third plurality.  The undisputed testimony of Mark Tamasi, June Burgess and Carrie Spradley corroborates what these public filings show.  The Court concludes and the evidence confirms that under Gammino's interpretation of his claims SWB's call-blocking services anticipate his patents because they *selectively* blocked 10-XXX-011+ direct-dialed international calls (and still block 101-XXXX-011+) by not blocking 10-XXX-01+ (and 101-XXXX-01+ today) operator-assisted international calls based on an analysis of the third plurality of digits in a dialing sequence.  Gammino cannot have it both ways–he cannot recover for infringement on the basis of call-blocking services that block 101-XXXX-011 telephone calls, if those same services existed in prior art. *Vanmoor,* 201 F.3d at 1366-67; *See also Polaroid Corp.,* 789 F.2d at 1573 (that which

infringes, if later, would anticipate, if earlier).

Gammino argues in his Response that SWB's "alleged" prior art could not selectively block 10XXX calls.  To support this argument, Gammino cites SWB's November 5, 1991 Brief to the FCC whereby SWB discussed the high-cost of developing call-blocking software for older analog switches which would have enabled the switches to block 10-XXX-011+ calls.  Gammino, however, ignores the fact that SWB stated in the same brief that its digital 5ESS switches already had the "technical ability to block different dialing schemes, including international 10XXX-011 dialing" which according to Gammino are the "types of calls that the claims of the patents cover."  By making that argument, Gammino  ignores the documents set forth in Section III(A) and (B) of this Order which show SWB implemented call-blocking services that blocked international direct-dialed calls as early as May 31, 1991.

In light of SWB's public statements to the Texas PUC and the public documents set forth in this Order, Gammino's statement that SWB has "produced no documentary evidence that it invented an international access call blocking method in 1990 or 1991" is unfounded.  The Court also notes Gammino's reliance on *Woodland Trust v. Flowertree Nursery, Inc.* is misplaced.  148 F.3d 1368, 1371 (Fed. Cir. 1998).  *Woodland Trust* involved the uncorroborated testimony of interested witnesses concerning the prior use of an invention that they admitted had been abandoned for at least ten years.  *Id.*  In this case, however, Tamasi and Burgess's testimony is corroborated by public documents

which show SWB implemented its call-blocking services in central office switches in 1991 and those services are still offered for sale today.  Aside from mere conclusory allegations, Gammino has not put forth any evidence to show that SWB's call-blocking services did not selectively block 10-XXX-011+ international direct-direct dialed calls.

Gammino has accused two call-blocking services that SWB had implemented in its central office switches which were publicly available for purchase before Gammino even conceived of his invention on January 15, 1992.  SWB has proven by clear and convincing evidence that more than a year before Gammino ever filed for the '125 or '650 patents, SWB's Local and 1+ Blocking Service was (1) the subject of a commercial offer for sale and (2) ready for patenting.  *Vanmoor,* 201 F.3d at 1366-67; *see also  Pfaff,* 525 U.S. at 67.  Likewise, SWB has proven that more than a year before Gammino ever filed for the '650 patent, SWB's IDD Blocking Service was (1) the subject of a commercial offer for sale and (2) ready for patenting.  The Court concludes that under Gammino's interpretation the patents are invalid pursuant to § 102(b).

## IV.  *Markman* Construction and Infringement

In Section III of this Order, the Court assumed without deciding that Gammino's interpretation of the claims of his patents was correct without construing the claims. The Court concluded that under Gammino's interpretation SWB's prior call-blocking services anticipated his patents rendering them invalid as a matter of law as set forth in *Vanmoor.*

In this Section, the Court construes the claims of Gammino's patents, but only to the extent necessary, for the purposes of infringement. The essential element of Gammino's complaint against SWB is his allegation that one or more of SWB's products or services infringes his patents. When determining whether a defendant infringed a patent the court must first correctly construe asserted claims, and then compare the claims to the allegedly infringing devices, systems or methods. *Seachange International Inc. v. C-Cor Inc.,* 413 F.3d 1361, 13777 (Fed. Cir. 2005). "To prove patent infringement, the patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents." *Id.*

## A.    Claim Construction

Before the Court are the parties' cross-motions and briefs on the issue of claim construction of the patents-in-suit, the '125 patent and the '650 patent. After conducting a *Markman* hearing and reviewing the parties' briefs and all related filings and evidence, including the patents-in-suit, the specifications, the patent prosecution histories to the extent they were submitted by the parties, and the parties' proposed claim constructions, this Court construes the disputed claims according to *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 360 (1996).

### 1.    Principles of Claim Construction

Claim construction is a matter of law, and claims are construed by the court as

they would be understood by persons of ordinary skill in the field of the invention. *See Markman*, 52 F.3d at 979. A person of ordinary skill in the field of the invention is deemed to read the claim term not only in the context of the claim, but in the context of the entire patent, including the specification. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005)(en banc). When interpreting asserted claims, the Court looks first to the intrinsic evidence which includes (1) the patent itself, including the claims, (2) the specification and (3) the prosecution history. *Phillips,* 415 F.3d at 1313; *See also Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999). Thus, in determining the legally operative meaning of disputed claim language, intrinsic evidence is the highest and most reliable form of evidence because it provides evidence of how the United States Patent and Trademark Office (the "Patent Office") and the inventor understood the patent. *Phillips,* 415 F.3d at 1317. Using these tools, the court construes only the claims that are in controversy, and only to the extent necessary to resolve the dispute. *Vivid Tech.,* 200 F.3d at 803.

In particular, the prosecution history is relevant in determining whether the patentee intends the language of the patent to be understood in its ordinary meaning. Although a court should generally give such terms their ordinary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, so long as the special definition of the term is clearly stated in the patent specification or file history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576,

1582 (Fed. Cir. 1996).  The prosecution history gives insight into what the applicant originally claimed as the invention, and often what the applicant gave up in order to meet the Patent Office Examiner's objections.  *Lemelson v. General Mills, Inc.,* 968 F.2d 1202, 1206 (Fed. Cir. 1992).  Likewise, the prosecution history limits the interpretation of the claims so as to exclude any interpretation which may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.  *Phillips,* 415 F.3d at 1317; *See also Standard Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 452 (Fed. Cir. 1985)

## 2. The "Preventing" Step, "Means for Preventing," and "Prevention Means"

As stated in Section I of this Order, Gammino contends that the patents in dispute *selectively* block international access calls based on predetermined digits and do not require the blocking of all international calls.  He asserts that the claims block only international access calls with dialing sequences that meet two criteria, namely, the third plurality of numbers within the sequence are (1) in a position to accomplish international dialing, and (2) are predetermined numbers.  Further, he asserts that the claims do not automatically block all access calls but only a sub-category of access calls that are selected for blocking based on predetermined digits.  Based on Gammino's proposed claim construction, his patented method would prevent the calls that cause fraudulent losses, and at the same time, continue calls that generate profits.

However, SWB contends that the claims block *all* international telephone calls at the payphone if the digits entered in the third plurality indicate that the telephone

call is international.  Gammino's claimed invention distinguishes international calls from non-international calls by analyzing the third plurality of digits.  According to SWB, Gammino's solution successfully prevented fraudulent telephone calls at the Port Authority because it blocked *all* international dialing at the Port Authority–blocking both legitimate international telephone calls and fraudulent international telephone calls when the digits in the third plurality indicate the call is international.

Based on the intrinsic evidence and a reading of (1) the claims, (2) the specification of the patents, and (3) the prosecution history of the patents, the Court construes the terms "preventing" step, the "means for preventing," and the "prevention means" of disputed Claims 1, 15, 22, 35 and 42 of the '125 patent and disputed Claims 1 and 3 of the '650 patent to require the blocking of *all* international calls if the third plurality of digits indicates that the telephone call is international.  In other words, based on clear intrinsic evidence, the Court defines the preventing function of the claims to require the blocking of all international calls.

The patents state that a device must block all international calls if the third plurality of digits indicate that the telephone call is international in order to be in accordance with the claimed invention.  For example, Claim 1 of the '125 patent provides, in pertinent part,

> means for evaluating said third plurality of dialing signals and for preventing establishment of said telephone call if said evaluated third plurality of dialing signals are determined to a) be in a location in said dialing sequence to accomplish international dialing and b) respective predetermined signals *which are*

- 23 -

*used for international dialing* irrespective of said second plurality of dialing signals.
'125 patent, col. 10, lines 34-41 (emphasis added).

During the prosecution of his patents, Gammino repeatedly distinguished prior art that did not block all international calls.  The Patent Office rejected Gammino's patents eight times based on prior art call-blocking solutions which blocked some, but not all, international calls.  In particular, the Patent Office determined that U.S. Patent No. 4,577,066 (the "Bimonte" patent) anticipated many of Gammino's claims because the Bimonte patent also blocked international calls.  To distinguish his patents from Bimonte and other prior art, Gammino argued that his patents, unlike other prior art, blocked *all* international calls based on an analysis of the third plurality of digits.  In so distinguishing his patents, Gammino made the following statements to the Patent Office:

> "If the digits in the third plurality of digits are digits which are used for international dialing then the call is prevented."

> "If certain dialing in the dialing sequence are DETERMINED to be used for international dialing, then prevent the call...If...certain dialing signals are DETERMINED not to be used for international dialing, then allow the call."

> "Applicant is preventing international calls based upon a determination that the call is international.  In this way, for example, international calling card fraud is prevented."

Therefore, according to Gammino, if a call is international, his claimed invention will block the call; otherwise, the call will be allowed.  For example, Gammino distinguished the Bimonte patent by showing the Patent Office that his claimed invention, unlike Bimonte's patent, would block 1-800-950-1XXX-01.  As he stated to the Patent Office,

> To put the matter in simple terms, Applicant's claimed invention will prevent the call dialed with the following sequence: 1 800 950 1xxx 01.  The digits 01 of course mean that the call is an international one.  Bimonte will allow this call to go through because it does not prevent a call based on its determination that the call is international.

He then goes on to say,

> In other words, Applicant's claimed invention 'looks for' international dialing digits.  If Applicant's invention 'finds' international dialing digits, then establishment of the call is prevented.

Thus, based on his own statements to the Patent Office, if his invention "finds" international dialing digits, the call is blocked.

In addition, to overcome the examiner's rejections, Gammino submitted several news articles that highlighted the fact his claimed invention blocked *all* international calls.  For example, Gammino submitted the July 1992 issue of Public Communications Magazine to show that New York Telephone was using his claimed invention, "permanently blocking international calls from several thousand of its payphones in the Port Authority Bus Terminal..."  Likewise, he submitted a Port Authority memorandum to the Patent Office wherein Ken Philmus, a Port Authority official, acknowledged that Gammino's solution "blocked all international calls" and resulted in a "small down side" that legitimate calls would also be blocked.

In light of the evidence and arguments submitted to the Patent Office by Gammino, the examiner understood Gammino's claimed invention blocked all international calls throughout the prosecution.  This understanding is reflected by the

examiner's following statement,

> All appellant's statements regarding 'prevention of fraudulent international calls' are not exactly accurate because the invention prevents ALL international calls. In examiner's opinion, based on the declarations provided by appellant, the claimed invention does not solve the problem of fraudulent international calls, it solves the problem of having anyone making any international call from Port Authority Bus Terminal.

Gammino confirmed the examiner's understanding that his claimed invention blocked all international calls by stating,

> The fact that Appellant's claimed invention will block ALL international calls is irrelevant to the decision of patentability of the claimed invention.

As SWB correctly notes, Gammino's confirmation and subsequent acquiescence to the examiner's understanding that his claimed invention prevents all international calls precludes him from now arguing that his claimed invention does not include the requirement of blocking all international calls. *Phillips,* 415 F.3d at 1317; *Norian Corp. v. Stryker Corp.* 432 F.3d 1356, 1362 (Fed. Cir. 2005)(a patentee cannot recapture broader claim interpretations after acquiescing to a narrower interpretation in distinguishing prior art); *See also Glaxo Wellcome, Inc. v. Impax Laboratories, Inc.,* 356 F.3d 1348, 1357 (Fed. Cir. 2004).

In an attempt to overcome SWB's proposed claim construction, Gammino contends in his Claim Construction Reply Brief that the claims and specification in the '125 and '650 patents provide for the selective prevention of some but not all international calls. See '125 patent, col. 1, lines, 10-15. Although the claims and

- 26 -

specification provide for the "selective disablement of telecommunications devices,"
Gammino ignores the fact that in distinguishing prior art, as stated above, he told the
Patent Office on numerous occasions that his claimed invention blocked *all* international
calls and acquiesced to the examiner's interpretation that his claimed invention blocked
*all* international calls. *Phillips,* 415 F.3d at 1317; *Norian Corp.,* 432 F.3d at 1362. In
any event, the patents are anticipated under Gammino's interpretation as set forth in
Section III of this Order.

In his Claim Construction Brief, Gammino also points to examples of calls that
do not include international dialing digits in the third plurality to show that those calls
are international and not blocked by his claimed invention. As stated above, Gammino's
claimed invention distinguishes international calls from non-international calls by
analyzing the third plurality of digits. The Court does not dispute that those calls are
not blocked by his claimed invention– Gammino's claimed invention blocks calls based
on an analysis of the *third* pluralities. Therefore, the Court finds Gammino's argument
without merit. If the digits in the third plurality are used for international dialing, then
as Gammino has stated, the call is prevented.

Based on the intrinsic evidence, particularly the prosecution history, Gammino
understood his invention to block all international calls. *Phillips*, 415 F.3d at 1317.
Therefore, he limited his invention in the course of prosecution to mean the blocking of
all international calls. *Id.* The Court interprets the "preventing" function of the claims

of the patents to require the blocking of all international telephone calls if the digits in the third plurality are digits which are used for international dialing.

### 3. Predetermined Signals or Digit Sequences Used For or To Accomplish International Dialing

For the reasons set forth in Section IV(A)(2) of this Order and discussed in this section, the Court construes "predetermined sequences [signals] which are used for international dialing" in disputed Claims 1, 22 and 29 of the '125 Patent and disputed Claim 1 of the '650 patent to mean "the set of *all* digits which are used for international dialing." Similarly, the Court finds that "predetermined digit sequences" in disputed Claim 3 of the '650 patent to mean "the set of all signals which are used for international dialing."

Gammino asks this Court to construe this language to mean *any* of the signals that can be used for international dialing. However, Gammino's arguments made during prosecution contradict this interpretation. In fact, Gammino recognized that his invention blocked all international calls when he stated that his invention is "particularly suited for locations where few legitimate calls are typically made to international locations," and therefore, his "claimed invention would probably not be used at an airport" where many legitimate international phone calls are made.

Gammino also submitted to the Patent Office a license agreement whereby he licensed his patent applications to Technology Service Group, Inc. ("TSG"). Gammino told the Patent Office that the dialing sequences (e.g. telephone numbers) listed in the

TSG License Agreement "correspond exactly to his claimed invention." The telephone numbers listed as Exhibit A in the license agreement are:

> 10xxx-01
> 950-10xxx-01
> 1800-xxx-xxxx-01
> 800-xxx-xxxx-01
> 950-10xx-809
> 1800-xxx-xxxx-809
> 800-xxx-xxxx-809

The numbers listed above represent all known telephone numbers for making international calls as of 1992 and as Gammino stated they "correspond exactly to his claimed invention." Based on Gammino's statements to the Patent Office regarding the license agreement, "predetermined digit sequences [signals] which are used for international dialing" and "predetermined digit sequences" must mean "the set of all digit sequences which are used for international dialing." Therefore, the Court gives the terms their meaning as proposed by SWB and as supported by intrinsic evidence. Such an interpretation is consistent with the Court's construction set forth in Section IV(A)(2) of this Order.

### 4. "Irrespective of"

SWB asks this court to interpret the term "irrespective of" which appears in disputed Claims 1, 15, 22, 29, 35, and 42 in the '125 patent and in disputed Claims 1 and 3 in the '650 patent to mean "without analyzing the content of." In contrast, Gammino asks the Court to construe "irrespective of" to mean "without regard to."

Both Parties point to language in the specification–which refer to digits in the second plurality as "don't care" values–to support their proposed construction.  Likewise, both Parties highlight language in the prosecution history where Gammino stated that his claims are "directed toward preventing international telephone calls regardless of the indicated carrier" to support their proposed construction.

The Court construes the term "irrespective of" to mean "without analyzing the content of;" thus, the Court gives the terms their meaning as proposed by SWB.  Both patents describe the digits in the second plurality as "don't care" values–digits that Gammino's patents do not analyze.  The patents explain that Gammino's claimed invention does not analyze the content of the second plurality as part of determining whether to block a call:

> Table entries may include "don't care" values to indicate digits and locations in the dialing sequence which should not serve as a basis for preventing completion of the telephone call.

125 Patent, col. 4, lines 37-40; '650 Patent, col. 4, lines 41-44.

In fact, during the prosecution of both patents, Gammino distinguished his patents from the Bimonte patent by arguing that Bimonte used the content (e.g. digits) in the second plurality to identify the long distance carrier in order to determine if the call could be carried on the identified carrier.  Specifically he stated,

> Bimonte discloses evaluating whether a call can be carried on an indicated carrier. By contrast, Applicant's claims are directed toward preventing international telephone calls regardless of the indicated carrier.  Bimonte does not perform this

claimed function.

In distinguishing his patents from Bimonte, Gammino also stated,

> It is to be noted that Applicant's determination, as to whether to prevent establishment of a telephone call, is made irrespective of and independent of the second plurality of dialing digits...

Thus, Gammino argues that his claimed invention operated without analyzing the content of the second plurality of digits.  In other words, Gammino's call-blocking determination (i.e. analysis) is made "irrespective of and independent of" the second plurality of digits.

According to Gammino, his patents "regard" the second plurality of digits; therefore, the term "irrespective of" must mean "without analyzing the content of."  In his Claim Construction brief, Gammino states:

> Under the method, signals in the second plurality are analyzed to determine if particular signals have been entered at particular places in the dialing sequence. As such, the claims contemplate that calls would be prevented regardless of the second plurality but that the second plurality can be dealt with to determine if signals are located at particular places.

Gammino's brief shows that the second plurality of digits are "dealt with" and thus regarded to "determine if signals are located at particular places."  Gammino agrees that the second plurality is analyzed, but the analysis does not involve the content of the second plurality.  The Court will not construe "irrespective of" to mean "without regard to" because Gammino's patents regard the second plurality of digits to determine the their respective location within the dialing sequence.  The Court, therefore, construes

"irrespective of" to mean "without analyzing the content of"

**B.      SWB's Dialing Plans Do Not Infringe Gammino's Patents**

Gammino has failed to meet his burden of showing that any SWB product, service or device meets each claim limitation of the '125 patent or the '650 patent as a matter of law.  Since September 1998, the issue date of the patents, SWB has assigned the payphone lines in its network to ten dialing plans identified by number as 07, 08, 09, 10, 11, 12, 14, 46, 52, and 76.    As set forth above, Gammino's patents include a preventing function that requires the prevention of *all* international telephone calls on the basis of digits in the third plurality.  Seven of SWB's dialing plans simply do not block *all* international calls.  Three of SWB's dialing plans block all international calls by blocking all 1-800+ and 101-XXXX+ calls, but these dialing plans do not block any calls–domestic or international–based on the digits in the third plurality of the telephone.

**1.      Seven of SWB's Dialing Plans Do Not Prevent All International Calls**

Dialing Plans 07, 09, 10, 12, 14, 46 and 76 do not block all international telephone calls; therefore, these seven dialing plans do not meet all of the limitations of the claims.  Because these seven plans do not meet all the limitations of the claims, they do not infringe Gammino's patents.

Each dialing plan has a routing sheet that includes a table of the calls a switch

either allows or blocks. The table provides access codes and call types which can be cross-referenced to determine the corresponding routing key. A routing key of "1" for a telephone call indicates the switch allows the call. Based on SWB's routing sheets associated with these dialing plans, each of the seven dialing plans has a routing key of "1" which indicates that the switch allows the call. Accordingly, these seven plans do not block international telephone calls made with the 101-XXXX-01+ or 1-800-XXX-XXXX-01+ (operated-assisted international calls); instead, these international telephone calls are passed to the interexchange carrier. Because Dialing Plans 07, 09, 10, 12, 14, 46 and 76 allow certain international calls, they do not infringe the claims of Gammino's patents. In other words, these seven dialing plans do not meet every limitation of the claims; therefore, they do not infringe Gammino's patents.

2.    **SWB's Remaining Three Dialing Plans Do Not Infringe**

Dialing Plans 08, 11, and 52 block *all* 101-XXXX and 1-800 telephone calls regardless of whether those calls are international or domestic. These plans block all international calls without analyzing the third plurality of digits. As set forth above, Gammino's claims analyze the third plurality of digits in a dialing sequence to determine if those digits are (1) in a location to accomplish international dialing and (2) are digits used for international dialing. Thus, Gammino's claimed invention blocks calls based on an analysis of the digits in the *third* plurality. However, SWB Dialing Plans 08, 11, and 52 block *all* 101-XXXX and 1-800 telephone calls without ever looking at the third

plurality of digits.  Because SWB's dialing plans do not rely on the third plurality digits

to block international calls, such dialing plans do not infringe any claims of Gammino's

patents.

### 3.      Gammino's Response

In his Response, Gammino argues that his patents *selectively* block international

access calls and do not block *all* international calls without ever citing to the prosecution

history of either patent.  Instead, Gammino contends that "neither the claims nor the

specification state that the invention prevents <u>all</u> calls."  Gammino cites *Chimie v. PPG*

*Indus., Inc.,* in support of his argument that prosecution history cannot "enlarge,

diminish, or vary the limitations in the claims."  402 F.3d 1371, 1379 (Fed. Cir. 2005).

However, the Federal Circuit in *Chimie* held that courts *must* consult the prosecution in

order to "ensure that claims are not construed one way in order to obtain their allowance

and a different way against accused infringers."  Thus, Gammino is bound by his

statements made to the Examiner and Board of Patent Appeals during prosecution.

*Springs Window Fashions LP v. Novo Indus., L.P.,* 323 F.3d 989, 995 (Fed. Cir. 2003)("The

public notice function of a patent and its prosecution history requires that a patentee

be held to what he declares during the prosecution of his patent."); *See also Standard Oil*

*Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 452 (Fed. Cir. 1985).

Gammino also argues that the Examiner was reversed by the Board of Patent

Appeals in an effort to prevent the Court from relying on the Examiner's statement that

Gammino's "invention prevents ALL calls."  However, Gammino asserted in his two appeal briefs in the Patent Office that his claims required the blocking of *all* calls.  For example, appealing from the Final Rejection dated February 5, 1996 of claims 1 through 58,  Gammino again acquiesces to the Examiner's interpretation by stating in his appeal brief that "the fact Appellant's claimed invention will block ALL international calls is irrelevant to the decision of patentability."  The Board of Patent Appeals must have considered Gammino's statement acquiescing to the Examiner's interpretation when considering whether to issue the patent.

### C.  SWB Does Not Block International Calls "Irrespective Of" the Second Plurality of Digits

As stated in Section IV(A)(4) of this Order, the Court construed the term "irrespective of," which appears in every claim of Gammino's patents, to mean Gammino's patents block calls "without analyzing the content of" the values which comprise the second plurality; thus, the Court adopted SWB's proposed interpretation of "irrespective of."  Not one of SWB's ten dialing plans block international calls "irrespective of" the second plurality of digits as required by all Gammino's claims–all ten dialing plans "analyze" the digits in the second plurality in a telephone number.  In other words, if SWB blocks international telephone calls, it does so by analyzing the content of the second plurality of digits.

The second plurality of digits comprises the carrier identification code ("CIC").

Gammino bases his allegation of infringement on SWB's blocking of equal access calls with the digit sequence 101-XXXX-011.  However, to determine whether the caller has selected a valid carrier, SWB central office switches always analyze the second plurality of digits (e.g. the "XXXX" digits) for every equal access call.  If the caller has not selected a valid carrier, the call is blocked.  Thus, every SWB dialing plan that blocks 101-XXXX-011+ calls analyze the CIC as part of the process of blocking an international telephone call.  By analyzing the CIC, SWB does not block calls "irrespective of" the second plurality of digits.  Therefore, none of SWB's switches or dialing plans infringes the claims of the '125 or '650 patents.  During the *Markman* Hearing, Gammino conceded that he cannot establish infringement if this Court construes "irrespective of" to mean "without analyzing the content of."

Even under Gammino's construction which would define "irrespective of" to mean "without regard to," Gammino cannot establish infringement.  SWB's central office switches always regard and analyze the content of the second plurality to determine if the CIC is valid.  No SWB call-blocking service blocks calls "without regard to" or "independent of" the digits in the second plurality; therefore, SWB could not infringe any claim of Gammino's patents even under his proposed construction.

In his Response, Gammino states, "[t]he bottom line is that the patented methods prevent calls irrespective of the second plurality (or regardless of whether the carrier code is correct)."  In essence, Gammino now attempts to change his proposed construction

from "without regard to" to "regardless of."  In other words, Gammino now argues that as long as calls are prevented "regardless of whether the carrier code is correct" the "irrespective of" limitation is satisfied.  The Court will not adopt Gammino's new definition because, as SWB correctly states, it focuses on the outcome of the preventing step (i.e. whether the call is blocked) rather than the manner in which the preventing step operates as required by the claims (i.e. how the call is blocked).  Gammino's statement during prosecution that his patents block calls "independent of" the second plurality of digits confirms that the claim term "irrespective of" focuses on the manner in which the preventing step operates (e.g. the preventing step operates independent of the second plurality of digits).

Gammino also argues that SWB's analysis of the second plurality of digits to determine the validity of carriers does not provide a defense to infringement.  By citing *Sun Tiger, Inc. v. Scientific Research Funding Group,* Gammino asserts SWB cannot avoid infringement by merely adding elements (e.g. the analysis of the second plurality of digits) if each element recited in the claims is found in the accused device.  189 F.3d 1327, 1336 (Fed. Cir. 1999).  In making this argument, he ignores the fact that the term "irrespective of" is a negative claim limitation which tells the public what the claim excludes from coverage.  The term "irrespective of" clarifies that the patents do not analyze the content of the second plurality; therefore, devices and methods that do in fact analyze the content of the second plurality cannot infringe.  If an accused product

contains a feature precluded by a negative claim limitation, the product is excluded from the scope of the claim and thus cannot infringe. *See Jeneric/Pentron, Inc. v. Dillon Company, Inc.,* 205 F.3d 1377, 1382 (Fed. Cir. 2000); *W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC,* 370 F.3d 1343, 1353 (Fed. Cir. 2004); *Power Mosfet Tech., L.L.C. v. Siemens AG,* 378 F.3d 1396, 1409-10 (Fed. Cir. 2004)(accused product containing middle layer between two layers could not infringe claim that required two layers of material to be in physical contact).  The Court rejects Gammino's argument; therefore, SWB's failure to evaluate and prevent calls "irrespective of" the second plurality of digits shows that no SWB product, device or method contains each element of the claims.

Gammino has failed to meet his burden of introducing any evidence that would demonstrate that SWB infringes any of the asserted claims of the patents.  Because Gammino can not show that an accused product or service practices every element of at least one claim, SWB can not infringe Gammino's patents as a matter of law. Accordingly, the Court grants SWB's motion for summary judgment.

## V.    Conclusion

The Court **GRANTS** SWB's motion for summary judgment because Gammino's own infringement case places his claims squarely within items of anticipatory prior art rendering the asserted claims of his patents invalid under § 102(b).  Alternatively, the Court **GRANTS** SWB's motion for summary judgment because Gammino has failed to meet his burden of showing that any SWB product, service or device meets every

element of at least one claim limitation of the '125 patent or the '650 patent.

**SO ORDERED**.

Signed March 23rd, 2007.

ED KINKEADE
UNITED STATES DISTRICT JUDGE